### IN RE C., N. O. & T. P. RAILWAY COMPANY.

1. VACATION OF STREETS—DAMAGES.

Owners of property in the "immediate vicinity" of some one of certain streets sought to be vacated, but not abutting thereon, cannot recover damages on account of such vacation unless it appears from the evidence that they have thereby suffered an injury different in kind, and not in degree only, from that suffered by the public.

2. RULE APPLIED.

Such property owners, for example, cannot recover damages by merely showing that they are owners of property in the immediate vicinity of the street sought to be vacated, and are in the habit of using it frequently, and more frequently than the public generally, and that the closing of the street would be a great inconvenience to them, by requiring them to travel farther to reach a given point.

3. DAMNUM ABSQUE INJURIA.

The mere inconvenience which such property owners suffer by the vacation of such streets is suffered also by the public and does not affect a legal right, but comes under the rule of *damnum absque injuria.*

4. EVIDENCE OF INTENDED USE OF THE PROPERTY.

Evidence in behalf of such property owners, as intervenors, under sec. 2656, Rev. Stat., in proceedings by a railway company, as owners of abutting property, to vacate certain streets, as to the use which the railway company proposed to make of the property, in connection with its own, after the streets were vacated, as an element of damage or as tending to depreciate the value of property in the vicinity was incompetent and the trial court properly refused to allow it to go to the jury. If any of the legal rights of claimants are infringed upon, damages may then be recovered or an injurious use restrained.

ERROR to the Court of Common Pleas of Hamilton county.

SMITH, J.

With some hesitation we have reached the conclusion that the judgment of the court of common pleas in this case should be affirmed.

We think that the views, as expressed by the trial judge in the charge given by him to the jury, to the effect that the cross-petitioners in this case, who, in the matter of the petition of the railroad company asking the vacation of certain streets of this city, had intervened under the provisions of sec. 2656, Rev. Stat., to have damages assessed to them on account of such vacation, was correct and sustained by authority, viz.. that the railroad company, being the owner of all the lots and lands abutting on each side of the streets or parts of streets sought to be vacated, and no one of the cross-petitioners owning any property thereon, but owning property in the "immediate vicinity" of some one of the streets so sought to be vacated, could not recover damages therefor unless it appeared from the evidence that he had suffered an injury thereby different in kind, and not in degree only, from that suffered by the public. That he could not, for instance, recover damages in this case by merely showing that he was the owner of property in the immediate vicinity of a street so to be vacated, and was in the habit of using it often in his business or otherwise, and more frequently perhaps than the public generally, and that the closing of such street would

be an inconvenience to him by requiring him to travel further than he did before to reach a given point. The public or any person desiring to use the street suffers the same inconvenience, and not affecting a legal right, it comes under the rule of *damnum absque injuria*.

We think, too, that the court was right in the view expressed, that the jury in this case could not properly consider, as an element of damage, the use that the railroad company proposed to make of its own property after the streets should be vacated, including the ground occupied by the streets before the vacation, which would revert to it as the owner of the abutting property. It is said and claimed, that after the vacation of the streets, the company proposed to erect on its property certain buildings, shop and freight depots, and run trains of cars thereto, and that the noise and smoke therefrom would greatly diminish the value of the property of the cross-defendants in the vicinity.

In the first place, it is not certain that such improvements or plans will be carried out. We see nothing in the bill of exceptions relating thereto, or showing that it was the purpose to do this. But if it be conceded that it will be, and the legal rights of any of these claimants are infringed upon, damages may hereafter be recovered from the company, or any unlawful or injurious use of the premises may be restrained, and damages therefor may not be recovered in this proceeding.

The trial court held, in this case, that there was no evidence offered or received as to the matter of damages which was competent to go to the jury, under the rulings referred to, and all of the evidence offered on damages was ruled out, and the jury was thereupon directed to find a verdict against all of the claimants. Was this action of the trial judge right?

The evidence offered by the claimants was substantially of this character, varying slightly in particular cases, but not essentially: In the first place, evidence was offered as to the ownership by a claimant of a particular lot, or lots, and its location, with reference to the various streets sought to be vacated and others, as shown on the plat offered in evidence, showing the state of affairs in that part of the city. As before stated it was shown, and there was no controversy as to this, no one of the lots of the claimants abutted on any part of a street sought to be vacated, but that they were all within the imediate vicinity, and that the company owned all of the lots abutting thereon. Then evidence was offered showing how the lots were used or occupied, and tending to show the market value of the property as it then was. Then they sought to show, by persons claiming to have knowledge of the situation, by means of hypothetical questions, the opinion of the witness as to what the value of the property would be if the streets were vacated and the buildings, shops, depots and railroad tracks were placed there by the company and trains of cars were run on these different tracks. Whether the value would be increased or diminished, and if so, how much, and what the market value of the property would then be. The court refused to allow evidence of this kind to be given, to which exception was taken, and an offer to prove that the value would be a certain sum, much less than the present value, as fixed by the ruling.

It may be, as was said to the court in the charge to the jury, that there might be a special injury to property in the vicinity of a street sought to be vacated, by the vacation thereof, for which the owner might receive damages in a proceeding of this character, "as by the shutting off of property, or egress from it, or possibly in some other way." But,

so far as we can see in this case, no such instance of special injury or damages was presented here. And we think that the court, in its rulings on evidence, did not commit error prejudicial to the rights of any claimant, or such evidence as has been mentioned not having been received, and there being nothing on the subject of damages before the jury, that the court did not err in directing a verdict against the claimants.

C. W. Baker, for the cross-petitioners.

Harmon, Colston, Goldsmith & Hoadley, for the railroad company.